Randall M. Fox
Anthony E. Maneiro
KIRBY McINERNEY LLP
250 Park Avenue, Suite 820
New York, NY 10177
Phone: (212) 371-6600
Fax: (212) 751-2540

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOUNTAIN CANDY & CIGAR CO., INC.,<br><br>                   Plaintiff,<br><br>              v.<br><br>PLAINFIELD TOBACCO AND CANDY CO., INC. D/B/A RESNICK DISTRIBUTORS,<br><br>                   Defendant. | Case No.: 1:19-cv-2080 (KAM) (VMS) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
PLAINFIELD TOBACCO AND CANDY CO., INC.
D/B/A RESNICK DISTRIBUTORS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..................................................................................................1

**ALLEGATIONS IN THE COMPLAINT** ................................................................................2

    I.       The Elements of a CMSA Violation................................................................2
    II.      The Admissions by a Senior Resnick Sales Managers ...........................................4
    III.     Resnick Charged Below-Minimum Prices for Cigarettes........................................5

**THE APPLICABLE PLEADING STANDARDS**......................................................................7

**ARGUMENT**................................................................................................................................7

    I.       Resnick Focuses on Irrelevant Non-Cigarette Products .........................................7
    II.      Resnick Has Not Offered Any Proof of the Price of a Competitor .........................8

**CONCLUSION** ..........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Arista Records LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ................................................................................................ 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 7

*Duarte v. Comm'r of Revenue*,
    886 N.E.2d 656 (Mass. 2008) .............................................................................................. 9

*Fed. Trade Comm'n v. A.E. Staley Mfg. Co.*,
    324 U.S. 746 (1945) ........................................................................................................... 10

*Harold Levinson Assocs., Inc. v. N.Y. Dep't of Taxation & Fin.*,
    No. 603308/05, 814 N.Y.S.2d 561 (Table), 2005 WL 3527658
    (N.Y. Sup. Ct. N.Y. Cty. Mar. 21, 2005) ............................................................................. 4

*Hygrade Milk & Cream Co., Inc. v. Tropicana Prods., Inc.*,
    No. 88 Civ. 2861, 1996 WL 257581 (S.D.N.Y. May. 16, 1996) ....................................... 10

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007) ............................................................................................ 7, 8

*McLane Southern v. Ark. Tobacco Control Bd.*,
    375 S.W.3d 628 (Ark. 2010) .............................................................................................. 10

*Stevens v. Webb*,
    No. 12 Civ. 2909, 2014 WL 1154246 (E.D.N.Y. Mar. 21, 2014) ....................................... 4

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ............................................................................................................. 7

*Water Craft Mgmt. LLC v. Mercury Marine*,
    457 F.3d 484 (5th Cir. 2006) ............................................................................................... 9

**Statutes**

Cigarette Marketing Standards Act, N.Y. Tax Law Art. 20-A ............................................ *passim*

**Rules**

20 N.Y.C.R.R. § 82.2 .................................................................................................................... 3

20 N.Y.C.R.R. § 84.1 .................................................................................................................... 3

Fed. R. Civ. P. 8(a)(2) ................................................................................................................... 7

Plaintiff Mountain Candy & Cigar Co., Inc. ("Plaintiff" or "Mountain Candy") submits this memorandum of law in opposition to the Motion to Dismiss the Complaint by Defendant Plainfield Tobacco and Candy Co., Inc. d/b/a Resnick Distributors ("Resnick").

## PRELIMINARY STATEMENT

In the Complaint, Mountain Candy alleged in clear detail that Resnick is and has been violating the New York Cigarette Marketing Standards Act, N.Y. Tax Law Art. 20-A (the "CMSA") by illegally charging prices for cigarettes that are below the statutory minimum prices with the requisite intent. Mountain Candy described Resnick's overall scheme and supported that description with specific examples of how Resnick carries out the scheme to the detriment of Mountain Candy.

In its motion to dismiss, Resnick confronts none of those facts. Rather, it fundamentally misreads the Complaint and the CMSA to claim it has no liability. Resnick's first argument for dismissal is that Plaintiff failed to allege Resnick's costs for the non-cigarette products it sells, referring to a provision in the CMSA that talks about the sale of cigarettes together with other products for a "combined price." The fundamental flaw in this argument is that Plaintiff never alleged that Resnick sells cigarettes together with non-cigarette products for a combined price (and it does not). The provision upon which Resnick relies is simply inapplicable to this case.

Resnick's second argument for dismissal misreads the CMSA's meeting competition provision. Under the CMSA, a cigarette seller can avoid liability if it can provide "proof of the price of a competitor" that it met, but did not beat, in good faith. Resnick does not present any such proof of the price of a competitor. Instead, it simply avoids that provision in the statute and, without statutory or any other support, tries to put the burden of proving the competitors' price on Mountain Candy.

1

## ALLEGATIONS IN THE COMPLAINT

In the Complaint, Mountain Candy laid out detailed descriptions of: (i) the requirements of the CMSA and its legislative intent (Compl. ¶¶ 19-42); (ii) a Resnick senior sales manager's admission of Resnick's illegal pricing (*Id.* at ¶¶ 47-51); and (iii) Resnick's pushing its prices below the CMSA minimums by secretly giving rebates disguised as fake "credits" for damaged goods (*Id.* at ¶¶ 47-77).

## I.     THE ELEMENTS OF A CMSA VIOLATION

The CMSA makes it unlawful for a cigarette agent to sell cigarettes for less than the minimum prices set in the statute with the intent to injure competitors or destroy or substantially lessen competition. *See* CMSA § 484(a)(1).[1] Accordingly, there are two elements: (i) prices below the minimum, and (ii) the requisite intent. Under the statute, the intent element is presumed where the defendant has offered rebates. *See* CMSA § 484(a)(6).

For a cigarette agent such as Resnick, the minimum price set by the CMSA is the "cost of the agent," which is defined specifically as the manufacturer's price plus the cost of tax stamps plus the agent's "cost of doing business." The agent's "cost of doing business" is, in turn, defined as seven-eighths percent of the sum of the manufacturer's price and the cost of the tax stamps, plus two cents per 20-cigarette pack of cigarettes. While neither Resnick nor any other agent in New York has taken advantage of it, the law allows an agent to use a lower "cost of doing business" if it submits proof acceptable to the New York State Department of Taxation

---

[1] The CMSA is found in New York Tax Law, Article 20-A. Citations herein to the CMSA are set forth as "CMSA § ___." While this section summarizes the requirements of the statute, the statute is described in greater depth in the Complaint. *See*, *e.g.*, Compl. ¶¶ 19-42.

and Finance ("Department") that the agent's actual costs are lower than the formula cost. *See* CMSA § 483(b)(1); 20 N.Y.C.R.R. § 82.2(b)(2)(i).

The Legislature made it easy for agents to discover if any of their competitors had taken advantage of the actual cost/non-formula method of calculating the "cost of doing business," by excluding such determinations from tax secrecy and making them subject to the Freedom of Information Law. *See* CMSA § 487(a). Given that Resnick has not submitted sufficient proof acceptable to the Department evidencing Resnick's actual costs are lower than the formula cost, Resnick must use the CMSA formula to determine its minimum pricing. *See also* Compl. ¶¶ 33-35.

The CMSA makes the giving of rebates in the sale of cigarettes inherently suspect. It presumes the intent element of a violation where an agent has given rebates. *See* CMSA § 484(a)(6). Moreover, "[t]he burden of proving the legality of a rebate or concession shall be upon the seller when such rebate or concession is offered or given." 20 N.Y.C.R.R. § 84.1(b)(2).

Finally, the CMSA provides for a private right of action. It allows a person who has been injured by a violation or by a threatened violation to bring suit and recover its damages, as well as the costs of suit. CMSA § 484(b).

The Legislature had a clear purpose in enacting the CMSA. It wanted to save New York jobs by stopping the "economic dislocation" caused by out-of-state wholesalers who used the economic gains they received as a result of minimum price laws in neighboring states to "low-ball" prices in New York and to grind down prices to a matter of cents above cost per carton,

leaving the profit margins for New York sellers "unacceptably low." Compl. ¶¶ 19-23[2]  Resnick is one of those out-of-state sellers.

The CMSA can be enforced by the government as well as by private plaintiffs, and the government has enforced the CMSA against sellers it has found to be violating the minimum price requirement, including by the use of rebates. It has been publicly disclosed, for example, that in the early 2000s, the New York State Department of Taxation & Finance undertook an industry-wide audit initiative to pursue just such violations. *See Harold Levinson Assocs., Inc. v. N.Y. Dep't of Taxation & Fin.*, No. 603308/05, 814 N.Y.S.2d 561 (Table), 2005 WL 3527658, at *1 (N.Y. Sup. Ct. N.Y. Cty. Mar. 21, 2005) (describing the Tax Department investigation into rebates violating the CMSA).

New York's cigarette minimum price law is not unique. Many states have had somewhat similar minimum price laws for cigarettes, milk, liquor, gas, and other products.

## II.  THE ADMISSIONS BY A SENIOR RESNICK SALES MANAGER

Resnick's illegal pricing scheme in violation of the CMSA is carried out, in part, through its sales agents who interact directly with customers. These sales agents, who are responsible for acquiring customers and servicing existing customers, offer below-minimum prices to customers or prospective customers and then convey their agreements to Resnick's headquarters so that Resnick can implement the illegal prices using "credits" to conceal that the agreement was about cigarette pricing. Compl. ¶¶ 47-51.

---

[2] The bill jacket for the original enactment of the CMSA and the report of the New York State Department of Taxation & Finance's Cigarette Predatory Pricing Task Force are attached to the accompanying Affirmation of Randall Fox ("Fox Aff.") as Exhibits A and B, respectively. The Court can consider these documents, as they are described in the Complaint and are subject to judicial notice. *See, e.g.*, *Stevens v. Webb*, No. 12 Civ. 2909, 2014 WL 1154246, at *6 n.4 (E.D.N.Y. Mar. 21, 2014) (Matsumoto, J.) (taking judicial notice of bill jacket).

One of Resnick's senior sales managers was explicit about Resnick's pricing violations. While Resnick's list prices for cigarettes are at the CMSA minimums (or pennies above it), Resnick's senior sales manager admitted that Resnick would, for example, give rebates of $2.00 or $2.25 per carton of cigarettes to a retailer in Queens who purchases from Resnick 75 cartons of cigarettes a week, but that the amount of the rebate for any store varies based on the store's volume of cigarette purchases. As he said, "you know, it's a volume game." *Id.* at ¶ 49. Accordingly, where Resnick gave the $2 rebates, it was necessarily selling cigarettes for approximately $2 less than the CMSA minimum prices. *Id.* at ¶ 50.

Resnick's senior sales manager recognized that the CMSA prohibits agents from selling cigarettes below the legal minimum, for he explained how Resnick conceals its illegal pricing. He stated that Resnick characterizes its rebates as "credits" and explained that Resnick deducts those "credits" from the invoice price for the cigarettes. *Id.* at ¶ 51.

## III. RESNICK CHARGED BELOW-MINIMUM PRICES FOR CIGARETTES

As Resnick's senior sales manager acknowledged, Resnick charged prices for cigarettes that are below the legal minimums. Resnick's list prices were exactly at or pennies above the CMSA minimum, but Resnick gave rebates that were usually more than a dollar per carton, thus making the effective price for cigarette cartons well below the legal minimum. Compl. ¶ 50.

Resnick has the most complete records of its below-minimum prices, but in its Complaint, Mountain Candy laid out illustrative examples of Resnick's secret rebates that pushed Resnick's cigarette prices below the CMSA minimums. The examples are situations where Mountain Candy offered cigarette prices at exactly the CMSA minimums, but lost out on business because Resnick beat those prices by giving secret rebates on cigarette sales that

5

reduced Resnick's prices to below the legal prices. Resnick was thus beating, not meeting, a competitor's prices. *Id.* at ¶¶ 52-77.

One such illustrative example concerns the commonly owned collection of stores Woodridge Supermarket, Swan Lake Grocery Corp., 52 Pick-Up, and Youngsville Convenience (collectively, "Woodridge"). *Id.* at ¶ 54. Mountain Candy solicited cigarette business from Woodridge in 2018 by offering to sell cigarettes at the legal minimum prices calculated under the CMSA formula. *Id.* at ¶ 56. As a representative of Woodridge told Mountain Candy, the stores would not give business to Mountain Candy because Resnick gave them a rebate of $2.00 per carton of cigarette. *Id.* at ¶¶ 55-58. The Woodbridge representative further said that it would prefer to purchase from an in-state distributor like Mountain Candy, but there was no reason to do that when out-of-state distributor Resnick was offering lower prices. *Id*. at ¶ 57.

The Woodridge representative conveyed that the stores would purchase from Mountain Candy if it had not been for Resnick's illegal pricing. He said that the stores did not like that Mountain Candy, by not giving rebates pushing prices below the statutory minimums, was forcing it to purchase from an out of state distributor. Because Mountain Candy would not offer the illegal pricing, the representative said there was no reason to visit any of the Woodridge stores to solicit sales. *Id*. at ¶ 57.

At the time Mountain Candy solicited cigarette business from Woodridge and at each time thereafter that Resnick sold cigarettes to Woodridge, no other competitor had offered Woodridge legal prices that were equal to or lower than the prices that Resnick sold cigarettes to Woodridge. *Id.* at ¶ 59. The same pattern was followed in the other illustrative example set out in the Complaint, and Resnick repeated the conduct with many other customers as part of its consistent practice. *Id*. at ¶¶ 62-77.

# THE APPLICABLE PLEADING STANDARDS

The pleading requirement is satisfied by "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Upon a motion to dismiss, the Court is to accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See Kassner*, 496 F.3d at 237. A complaint "does not need detailed factual allegations," just that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Arista Records LLC v. Doe 3*, 604 F.3d 110, 119-21 (2d Cir. 2010). Mountain Candy's Complaint easily meets these standards.

# ARGUMENT

## I. RESNICK FOCUSES ON IRRELEVANT NON-CIGARETTE PRODUCTS

Resnick makes two arguments on its motion; one about non-cigarette products and one about meeting competition. Both are entirely without merit.

Resnick's first argument rests upon the "combined price" provision of the CMSA, which relates to those situations where a seller tries to hide its below-minimum prices for cigarettes by bundling its cigarettes with other products and selling them for a unitary price. Def.'s Mem. of Law in Supp. of Its Mot. to Dismiss Pls.' Compl. at 6-7, ECF No. 13-1 ("Def. Mem."). *See*

7

CMSA § 485(a)(2)(b).[3] That provision, by its terms, applies only where the cigarettes and non-cigarette products are sold for a "combined price." *Id.*

In the Complaint, Mountain Candy alleged that Resnick sells cigarettes for a cigarette-only price. *See, e.g.,* Compl. ¶ 49 ("Resnick's rebates vary depending upon a store's volume of cigarette purchases"); ¶ 51 (Resnick deducted the rebates from "the invoice price for the cigarettes."). There is no allegation that Resnick sells cigarettes and non-cigarettes for a combined price. At the motion to dismiss stage, Resnick is not entitled to offer its own version of facts. *See Kassner*, 496 F.3d at 237 ("the court is to accept as true all facts alleged in the complaint.").

Absent such combined prices, the provision that Resnick invokes has no bearing and Resnick's argument that the Complaint somehow fails to make allegations relating to that provision necessarily fails.

## II. RESNICK HAS NOT OFFERED ANY PROOF OF THE PRICE OF A COMPETITOR

Resnick again misconstrues the CMSA in arguing about the good faith meeting competition exception to CMSA liability. *See* Def. Mem. at 7-8. Resnick does that by overlooking the provision that says that the exception is available only when the person who charged below-minimum prices (in this case, Resnick) proves the below-minimum prices of competitors that it was meeting, but not beating, in good faith. *See* CMSA § 486(b). As the

---

[3] The subsection reads in full as follow: "In all advertisements, offers for sale or sales involving two or more items, at least one of which items is cigarettes, *at a combined price*, and in all advertisements, offers for sale, or sales involving the giving of any gift or concession of any kind whatsoever (whether it be coupons or otherwise), the agent's, retail dealer's or wholesale dealer's combined selling price shall not be below the cost of the agent, the cost of the retail dealer or the cost of the wholesale dealer, respectively, of the total costs of all articles, products, commodities, gifts and concessions included in such transactions." (emphasis added).

statute unambiguously states, "in the absence of proof of the price of a competitor," the competitor's price is deemed to be the CMSA minimum price.[4] Once the competitor's price is deemed to be the CMSA minimum, then there is no below-minimum price that could be met and the exception cannot apply.

Resnick has not presented any proof of the price of a competitor with respect to any transaction.

Once Resnick's statutory interpretation error is corrected, its argument for dismissal collapses. Resnick argues that Mountain Candy failed to present proof that Resnick did not make good faith efforts to meet the prices of unspecified competitors when Resnick was charging prices below the legal minimum. *See* Def. Mem. at 7-8. Once it is recognized that the good faith meeting competition exception can be invoked only after *Resnick* provides proof of the price of a competitor, it becomes clear that Plaintiff Mountain Candy had no such burden.

Even though Mountain Candy did not have the burden, it nevertheless alleged that Resnick beat, and did not just meet, prices of competitors, and that Resnick was not acting in good faith. For example, it did that with respect to prospective customer Woodbridge as described above, where Resnick beat Mountain Candy's prices that were at the CMSA minimums, and where Resnick did not make any good faith efforts to determine whether any competitors were offering legal prices below the statutory minimum. Compl. at ¶¶ 58-61.[5]

---

[4] The subsection reads in full as follows: "In the absence of proof of the price of a competitor, the cost of the retail dealer or the cost of the agent or wholesale dealer, as the case may be, which is established pursuant to section four hundred eighty-three of this article [*i.e.*, the CMSA], may be deemed the price of a competitor within the meaning of this section." CMSA § 486(b)(2).

[5] Good faith entails reasonable inquiry. *See Duarte v. Comm'r of Revenue*, 886 N.E.2d 656, 662-63 (Mass. 2008) (defendant established good faith under the Massachusetts cigarette minimum price law by presenting evidence of the detailed inquiries it made to determine the validity, including inquiries to the state tax department); *Water Craft Mgmt. LLC v. Mercury Marine*, 457

## CONCLUSION

Plaintiff Mountain Candy respectfully requests that the motion be denied. Should the Court nevertheless grant any part of Defendant Resnick's motion, Mountain Candy respectfully requests an opportunity to replead.[6]

DATED: New York, New York
May 15, 2019

Respectfully submitted,

KIRBY McINERNEY LLP

By: /s/
Randall M. Fox
Anthony E. Maneiro

---

F.3d 484, 489 (5th Cir. 2006) (under meeting competition exception to the Robinson-Patman Act, court looked at a checklist of factors, including whether the seller had received reports of discounts from other customers, whether the seller was threatened with termination if it did not lower prices, and whether the seller sought to corroborate the reported discounts by seeking documentary evidence or appraising their reasonableness from available market data); *Hygrade Milk & Cream Co., Inc. v. Tropicana Prods., Inc.*, No. 88 Civ. 2861, 1996 WL 257581, at *15-16 (S.D.N.Y. May. 16, 1996) (rejecting meeting competition defense where "[a]t best, Tropicana's information consisted of generalized assertions from retailers with an interest in convincing Tropicana that its allowances were too low."). Similarly, there can be no good faith if there is reason to believe a competitor's price is illegal. *See McLane Southern v. Ark. Tobacco Control Bd.*, 375 S.W.3d 628, 643 (Ark. 2010)(applying the Arkansas cigarette minimum price law, "[b]ecause patronage dividends paid to retailers by cooperatives constitute illegal rebates under [the 'unlawful acts' provision] for the reasons set forth above, any attempt by a wholesaler to match that price could in no way be 'made in good faith.'"); *see also Fed. Trade Comm'n v. A.E. Staley Mfg. Co.*, 324 U.S. 746 (1945) at 753 (rejecting the "startling conclusion" that a defendant could act in good faith to meet illegal prices).

[6] In a footnote, Resnick purports to incorporate arguments made by Core-Mark on its motion to dismiss in the related action against Core-Mark. Resnick does not specify which of Core-Mark's arguments might apply to it, though the allegations against Core-Mark differ somewhat from the allegations against Resnick. Such incorporation by vague reference should not be permitted. If, on reply, Resnick specifies arguments that it is purporting to incorporate by reference, Mountain Candy respectfully requests that such arguments be ignored or that it be accorded an opportunity to respond to them.

250 Park Avenue, Suite 820
New York, New York 10177
Phone: (212) 371-6600
Fax: (212) 751-2540
rfox@kmllp.com
amaneiro@kmllp.com

*Counsel for Plaintiff*