UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MOUNTAIN CANDY & CIGAR CO., INC.,

    *Plaintiff*,

      -against-

PLAINFIELD TOBACCO AND CANDY CO.,
INC., d/b/a RESNICK DISTRIBUTORS,

    *Defendant*.
----------------------------------X

**MEMORANDUM & ORDER**

19-CV-2080(KAM)(VMS)

**MATSUMOTO, United States District Judge**:

        Plaintiff Mountain Candy & Cigar Co., Inc. ("Mountain Candy" or "plaintiff") brought this action against defendant Plainfield Tobacco and Candy Co., Inc., doing business as Resnick Distributors ("Resnick" or "defendant") by filing a complaint on April 10, 2019, alleging violations of New York's tax laws regulating the sale of cigarettes. (ECF No. 1, Compl. 1.)[1]

        Prior to the commencement of this action, plaintiff, along with Amsterdam Tobacco Co., Inc. ("Amsterdam"), Donohue Candy and Tobacco Co., Inc. ("Donohue"), Kingston Candy & Tobacco Co., Inc. ("Kingston"), and Sunrise Candy & Tobacco Corp. ("Sunrise" and collectively with plaintiff, Amsterdam, Donohue, and Kingston, the "original plaintiffs"), all licensed cigarette distributors based in New York, brought a related

---

[1] Unless stated otherwise, citations captioned "ECF No. _" refer to electronic filings in Case No. 19-CV-2080.

action in Kings County Supreme Court on February 6, 2018, against Harold Levinson Associates, LLC ("HLA"), McLane Eastern, Inc., McLane Midwest, Inc., (together with McLane Eastern, "McLane"), defendant Resnick, Consumer Product Distributors, Inc., doing business as J. Polep Distribution Services ("Polep"), and Core-Mark Midcontinent, Inc. ("Core-Mark", and together with defendant Resnick and Polep, the "original defendants") alleging similar violations of New York's tax laws regulating cigarette sales. *See Amsterdam Tobacco Co., Inc. v. Core-Mark Midcontinent, Inc.*, No. 18-CV-1432(KAM)(VMS), 2019 WL 4696282, slip op. (E.D.N.Y. Sept. 26, 2019); (ECF No. 13-1, Def.'s Mem. in Support of Mot. to Dismiss ("Def.'s Mot."), 6 n.1.) McLane removed that action, which was assigned docket number 18-CV-1432, to this court on March 8, 2018, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446(a). *See Amsterdam Tobacco*, No. 18-CV-1432, (ECF No. 1, Not. of Removal). In the removed action, 18-CV-1432, the parties agreed to sever and remand all claims against HLA, a citizen of New York. *See id.*, (ECF No. 20, Stip. re: Remand); (ECF No. 34, Order dated 5/31/2018). The parties then agreed to dismiss all claims against McLane and certain claims against each remaining defendant. The original plaintiffs subsequently filed three amended complaints, one against each remaining defendant, Core-Mark, Resnick, and Polep. *See id.*, (ECF Nos. 36-38, Am. Compls.); (ECF No. 39, Not. Of

Dismissal); (ECF No. 40, Stip. re: Severance). The original defendants have, respectively, moved to dismiss the amended complaints for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See generally id.*, (ECF Nos. 41-51).

The original plaintiffs and the original defendants soon sought to sever this case into three separate actions, each based on the three amended complaints, and the court ordered the original plaintiffs to open two new cases and file their respective amended complaints as an initiating pleading in their respective new cases (assigned docket numbers 19-CV-2079 and 19-CV-2080), along with specific notices of dismissal in the original action. *See id.*, (Order dated 04/03/2019). Plaintiff complied with the court's order and on May 1, 2019, the court dismissed without prejudice Mountain Candy's claims against Resnick in the original action, leaving only Amsterdam's, Donohue's, and Mountain Candy's claims against Core-Mark in that action. *See id.*, (Order dated 05/01/2019).

In the Complaint in the instant action, plaintiff alleges defendant Resnick systematically violated New York tax law by selling cigarettes to New York retailers at prices below the statutory minimum price set by the New York Cigarette Marketing Standards Act ("CMSA"), N.Y. Tax Law § 483, et seq. (Compl. ¶¶ 1-2.) Resnick now moves this court to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim. (*See* ECF No. 13, Mot. to Dismiss; ECF No. 14, Pl.'s Opp. ("Opp."); ECF No. 16, Def.'s Reply ("Reply").) For the reasons discussed below, the court DENIES defendant's motion and finds that plaintiff has sufficiently pleaded a violation of the CMSA by Resnick.

## BACKGROUND

The following facts are drawn exclusively from plaintiff's Complaint, which the court presumes to be true for purposes of analyzing defendant's 12(b)(6) motion. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (citing *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir. 2006)) (on a 12(b)(6) "motion, we are constrained to accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor.") Plaintiff is a New York corporation and cigarette wholesale dealer (or "wholesaler"), and a licensed stamping agent. (Compl. ¶¶ 11.) Defendant is a New Jersey corporation. (*Id.* ¶ 12.) Like plaintiff, Resnick is a licensed cigarette wholesaler and stamping agent in New York. (*Id.* ¶ 13.)

New York State regulates the distribution of cigarettes through its tax laws. (*See id.* at 4-12.) The State controls what entities can sell cigarettes, collects taxes on the sale of cigarettes, and sets certain minimum prices under

4

the CMSA. (*Id.* at 5.) The typical distribution scheme for cigarettes begins with manufacturers who make and package cigarettes. (*Id.* ¶ 15.) In New York, as in many other states, stamping agents purchase cigarettes in cartons of several packs from the manufacturers and then purchase tax stamps from the state government. (*Id.*) The stamping agents then affix these tax stamps to the cigarette packages and sell the stamped cigarettes to either wholesalers or retailers. (*Id.*) Wholesalers that are also licensed stamping agents will generally sell to retailers, though some wholesalers are not licensed stamping agents. (*Id.*)

Agents, wholesalers, and retailers must all be licensed by New York's Tax Department to sell cigarettes in the state. (*Id.* ¶ 16.) Defendant Resnick is licensed as a stamping agent and wholesaler in New York; it purchases cigarettes from manufacturers, purchases and affixes tax stamps to the cigarette packages, and then sells the stamped cigarettes to retailers or smaller wholesalers. (*Id.* ¶ 18.)

The CMSA sets a minimum price by formula at which stamping agents and wholesalers in this distribution scheme may sell cigarettes. (*Id.* ¶ 14.) Plaintiffs allege that Resnick has engaged in a "broad scheme" to drive its cigarette prices below the statutory minimum by giving rebates to its New York customers dating back to 2015 and earlier. (*Id.* ¶ 43.)

5

Resnick's list prices for cigarettes are almost always at the CMSA minimum price, and when it occasionally diverges from the minimum, its list prices exceed the minimum by "pennies." (*Id.* ¶ 44.) As a regular part of its business, Resnick extended rebates in various forms to its New York customers, including per-carton rebates of $2.00 or $2.50. (*Id.* ¶ 46.) Resnick's sales representatives labeled the per-carton rebates as "credits" deducted from the invoice price, giving the impression that the price deductions were not rebates. (*Id.* ¶ 51.)

Plaintiff offers three specific examples where Resnick gave per-carton rebates to New York cigarette retailers, effectively preventing plaintiff from selling its cigarettes at the CMSA-minimum price to the same retailers. Most recently, in 2018, Mountain Candy solicited business from a group of four commonly owned cigarette retailers in Sullivan County, New York, collectively referred to as Woodridge. (*Id.* ¶¶ 54, 56.) Resnick supplied cigarettes to Woodridge at the CMSA-minimum price. (*Id.* ¶ 55.) Mountain Candy then offered cigarettes at the CMSA-minimum price to Woodridge, but Woodridge rejected this offer; a Woodridge representative informed Mountain Candy it would not switch suppliers because Resnick offered a $2.00 per-carton rebate. (*Id.* ¶¶ 56, 57.) The same representative also informed Mountain Candy that Woodridge preferred not to use an out-of-state distributor like Resnick, but nevertheless felt

6

forced to do so because Mountain Candy would not offer similar rebates. (*Id.*) No other competitor offered Woodridge cigarette prices that were equal to or lower than Resnick's prices. (*Id.* ¶ 59.)

Mountain Candy similarly offered to sell cigarettes at the CMSA-minimum to Shree Petroleum, a retailer in Wurtsboro, New York. (*Id.* ¶¶ 62, 64.) Shree rejected this offer, informing Mountain Candy that rebates on cigarettes were a "must;" Shree had previously been purchasing cigarettes from Resnick at the CMSA-minimum price, and Resnick similarly offered a $2.00 per-carton rebate to Shree. (*Id.* ¶¶ 63-65.) Mountain Candy was not aware of any other competitor that offered sales to Shree at prices equal to or lower than Resnick's prices. (*Id.* ¶ 67.)

Another retailer, White Lake Mobil in Woodbourne, New York, also purchased cigarettes from Resnick. (*Id.* ¶¶ 70-71.) Resnick charged White Lake list prices at exactly the CMSA-minimum, though White Lake continued to do business with Resnick because it offered White Lake $2.00 per-carton rebates on cigarettes. (*Id.* ¶ 71.) Most recently in 2018, however, Mountain Candy offered to sell cigarettes to White Lake at the CMSA-minimum; White Lake rejected this offer, telling Mountain Candy it desired better service from Resnick but that it ultimately preferred Resnick's offer of rebates. (*Id.* ¶ 73.)

7

No other competitor offered White Lake cigarette prices equal to or lower than Resnick's prices. (*Id.* ¶ 75.)

Mountain Candy also alleges that a senior Resnick sales manager admitted that Resnick offered rebates of $2.00 to $2.25 per cigarette carton to a Queens, New York, retailer based, in part, on the retailer's weekly volume and foot traffic. (*Id.* ¶ 49.) The same sales manager explained that Resnick characterizes its rebates for cigarettes as "credits" on monthly invoices, deducting the credit amount from the invoice price of the cigarettes. (*Id.* ¶ 51.)

**JURISDICTION**

The court has original jurisdiction over this dispute, as plaintiff invokes the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. This case was properly removed pursuant to 28 U.S.C. § 1441 once the claims against HLA, the non-diverse defendant, were severed and remanded. Plaintiff is a New York corporation and citizen and defendant is a New Jersey corporation and citizen that plaintiff alleges has significant contacts in New York. (Compl. ¶¶ 11-13.) Defendant has apparently consented to venue in this District. (*Id.* ¶ 10.) Plaintiff has not specified an amount in dispute, but once again, defendant does not challenge the court's jurisdiction on this basis. In any event, the court finds that the amount in dispute is "reasonably inferred" to exceed the jurisdictional

8

threshold of $75,000, given the timeframe and damages period alleged. *Transaero, Inc. v Chappell*, No. 13-CV-5752 (JFB)(GRB), 2014 WL 1783732, at *10 (E.D.N.Y. May 6, 2014); *see also Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) ("[W]e recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," and to rebut that presumption, defendant must "demonstrat[e] to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums."). The Queens retailer alone is alleged to purchase 75 cigarette cartons per week. (Compl. ¶ 49.) Given that the alleged CMSA-minimum price exceeds $100, (*id.* ¶ 31), a year's worth of revenue from this retailer would exceed $390,000. The court is thus satisfied that the amount in dispute exceeds the jurisdictional threshold and its exercise of diversity jurisdiction is proper.

## LEGAL STANDARD

Defendant moves under Rule 12(b)(6) to dismiss the Complaint for failure to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the "plaintiff pleads factual content that allows the court to draw the

9

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain detailed factual allegations, but must contain more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" or "naked assertions" devoid of "further factual enhancement." *Id*. For motions under Rule 12(b)(6), the court assumes the truth of all facts asserted in the operative complaint and draws all reasonable inferences from those facts in favor of the non-moving plaintiff. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006).

**DISCUSSION**

I. **Cigarette Marketing Standards Act**

New York's legislature enacted the CMSA in response to a perceived need to regulate and stabilize cigarette sale prices due to predatory pricing by out-of-state dealers with similar minimum-price statutes. *Lorillard Tobacco Co. v. Roth*, 99 N.Y.2d 316, 319 (N.Y. 2003). The CMSA prohibits the sale of cigarettes below cost when the seller intends thereby to harm competition or evade taxes. *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966, 2009 WL 705815, at *13 (E.D.N.Y. Mar. 16, 2009) (citing *Lorillard Tobacco*, 99 N.Y.2d at 316). Specifically, an agent, wholesale dealer, or retail dealer violates the CMSA when it advertises, offers to sell, or

10

sells cigarettes at less than cost, with intent to injure competitors, to destroy or substantially lessen competition, or to avoid the collection or payment of taxes.  N.Y. Tax Law § 484(a)(1).

Generally, the statute determines the minimum price for a carton of cigarettes by adding to the manufacturer's price (*i.e.,* the cost to a distributor) the cost of a tax stamp and a mark-up amount accounting for the wholesaler's or retailer's costs of doing business.  *See* N.Y. Tax Law § 483(a)-(b).  Under the statute, "cost" consists of the "basic cost of cigarettes" plus the agent's or dealer's "cost of doing business," which is also set by statutory formula.  *See id*.  The "basic cost of cigarettes" is in turn defined as "the invoice cost of cigarettes to the agent who purchases from the manufacturer . . . less all trade discounts, except discounts for cash, to which shall be added the full face value of any stamps which may be required by law."  *Id.* § 483(a)(1); *see also Golden Feather Smoke Shop*, 2009 WL 705815, at *13.

The CMSA includes an exception for sales below the statutory minimum that is applicable here.  Section 486 of the CMSA excludes sales "at a price made in good faith to meet the price of a competitor who is rendering the same type of services and is selling the same article at cost to him."  N.Y. Tax Law § 486(b)(1).  In the absence of proof of a specific competitor

11

price, the CMSA deems the competitor's price the cost of the wholesaler as determined by § 483, *i.e.,* the statutory minimum. *Id.* § 486(b)(2).

The CMSA also contemplates that distributors will sell cigarettes together with other products, and that distributors, in common business practice, may offer rebates, concessions, or even gifts to customers. *See id.* § 485(a)(2)(b); *see also* N.Y. Comp. Codes R. & Regs. tit. 20, § 84.1(b)(1) ("Generally, a concession is the granting or yielding to a request or demand at or before the time of sale, where as a rebate is a return of something of value at a later time."). In any sale including other products or involving rebates, gifts, or concessions, the wholesale dealer's combined selling price must not be below "the total costs of all articles, products, commodities, gifts and concessions included in such transactions." N.Y. Tax Law § 485(a)(2)(b). Though New York's regulations that enforce the CMSA expressly state that rebates are not inherently unlawful, they also caution against strictly construing the definitions of both rebates and concessions "so as to narrow or circumvent the cigarette marketing standards." N.Y. Comp. Codes R. & Regs. tit. 20, § 84.1(b).

**II.     Pleading Exceptions**

Defendant argues that the Complaint fails to allege that its conduct did not fall within the CMSA's exception for

12

meeting competition in good faith. (Def.'s Mot. 3, 8.)
Plaintiff responds that the good faith exception for meeting
competition requires a wholesaler prove a competitor's below-
CMSA-minimum price, which defendant has not done. (Opp. 8-9.)

As noted above, this action stems from that originally filed in Docket No. 18-CV-1432, before the undersigned. *See Amsterdam Tobacco Co. v. Core-Mark Midcontinent, Inc.*, No. 18-CV-1432(KAM)(VMS), 2019 WL 4696282 (E.D.N.Y. Sept. 26, 2019). There, the remaining defendant, Core-Mark, moved to dismiss the amended complaint, arguing, in part, that the plaintiffs failed to allege that the meeting competition in good faith exception did not apply. *Id.* at *5. The court denied the motion to dismiss, finding that the CMSA did not require a plaintiff plead facts affirmatively refuting a possible exception available to the defendant. *Id*. at *6. Defendant makes the same argument here in moving to dismiss the Complaint in this action. (Def.'s Mot. 7.) For the same reasons articulated in the court's September 26, 2019, Order, the court denies defendant's motion to dismiss on these grounds. The CMSA's exception for meeting competition in good faith need not be pleaded in the negative to survive a motion to dismiss. Instead, the CMSA's statutory structure makes clear the exception is an affirmative defense that excludes conduct, rather than an element to be pleaded.

13

**III.     Cigarette Sales Below CMSA Minimum**

Defendant additionally argues that plaintiff has failed to allege any cigarette sales by Resnick at prices below the CMSA's statutory minimum because the allegations reference but do not account for defendant's non-cigarette product sales, which impact its cost-basis. (Def.'s Mot. 2, 6-7.) That is, defendant combined sales of cigarettes with non-cigarette products such that a $2.00 rebate or credit would not necessarily result in cigarette sales at less than defendant's costs. (*Id.*) Plaintiff responds that defendant's argument concerning non-cigarette products is irrelevant because plaintiff did not allege Resnick sold cigarettes at a combined price but that its allegations specify cigarette sales. (Opp. 8.)

Defendant generally argues that rebates are not illegal under the CMSA. This is, of course, accurate *if* the rebate "does not directly or indirectly serve to reduce the price below that at which cigarettes can be lawfully sold or purchased in [New York]." N.Y. Comp. Codes R. & Regs. tit. 20, § 84.1(b)(2). Indeed, rebates are not inherently illegal under the CMSA, but they are suspect, as the giving of rebates permits a presumption of intent to harm competition. *See City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966(CBA), 2009 WL 2612345, at *37 (E.D.N.Y. Aug. 25, 2009) (quoting N.Y.

Tax Law § 484(a)(6)). What matters, then, is not that defendant allegedly offered or gave rebates, but the effect of those rebates, "directly or indirectly," on the price at which Resnick sold cigarettes as compared to Resnick's costs. The CMSA requires the wholesale dealer's combined selling price "not be below the cost of the . . . wholesale dealer . . . of the total costs of all articles, products, commodities, gifts and concessions." N.Y. Tax Law § 485(b).

Defendant asserts that the Complaint does not allege any sales below the CMSA minimum, but even a cursory review establishes that defendant is incorrect. In just one example, plaintiff alleges defendant charged a particular customer, Woodridge, list prices exactly at the CMSA minimum, (Compl. ¶ 55), and that Resnick gave Woodridge rebates of $2.00 per carton. Plaintiff could not convince Woodridge to move its business to Mountain Candy unless Mountain Candy offered rebates. (*Id.* ¶ 57). Further, plaintiff alleges defendant's own sales manager admitted to defendant's use of rebates based on the store's volume of cigarette sales. (*Id.* ¶ 49.) Taken together, these allegations, which the court must assume true when deciding a motion to dismiss, offer sufficient support to plaintiff's claim that Resnick sold cigarettes at less than its cost, because the CMSA minimum, absent an exception which the court has already determined is not applicable at this stage,

15

represents the wholesaler's costs.  Plaintiff pleads two other examples of such per-carton rebate arrangements by Resnick, and additionally alleges that it has suffered a "loss or reduction of cigarette business as a result."  (*Id.* ¶ 78.)  These allegations thus satisfy § 484, which makes it unlawful to advertise, offer to sell, or sell for less than a wholesaler's costs.

Defendant's argument that plaintiff has failed to account for Resnick's sale of other products amounts to a factual dispute.  Defendant does not argue that the facts as alleged in the Complaint do not entitle plaintiff to relief, but instead argues that some other facts, not pleaded, contradict the Complaint's allegations that Resnick sold cigarettes at below-cost.  This is not a cognizable argument on a Rule 12(b)(6) motion.  As pleaded, plaintiff alleges defendant listed its cigarettes at the statutory minimum or mere pennies above the minimum, and then offered and gave rebates to its customers—Woodridge, White Lake, and Shree—in the form of monthly credits based on the volume of cigarette cartons sold.  These allegations are sufficient to permit the court reasonably to infer that defendant violated the CMSA by selling cigarettes at prices less than its costs.  If defendant in fact combined sales with non-cigarette products such that its offered credits did not reduce its cigarette sales below its costs, discovery may

bear that out, and defendant may move for summary judgment on that ground.

Finally, as to § 484's intent requirement, the CMSA provides that evidence of offering or giving a rebate or concession "of any kind or nature whatsoever in connection with the sale of cigarettes . . . shall be *prima facie* evidence" of intent. N.Y. Tax Law § 484(a)(6)(emphasis added). As plaintiff alleges, Resnick offered rebates that drove down its cigarette sales price to below-cost, and, thus, plaintiff has sufficiently pleaded that Resnick violated § 484 of the CMSA.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is DENIED. The parties shall proceed to discovery and are hereby referred to Magistrate Judge Scanlon for all pre-trial matters.

**SO ORDERED.**

Dated:   November 12, 2019
         Brooklyn, New York

/s/
**Kiyo A. Matsumoto**
United States District Judge
